UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NTT DOCOMO, INC.,

                     Petitioner,

v.

TATA SONS LIMITED,

                     Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

:
:
:
:
:
:
:

Civil Action No. 1:16-cv-7809
ECF Case

## PETITION TO CONFIRM A FOREIGN ARBITRATION AWARD AND FOR AN ENTRY OF JUDGMENT

       Petitioner NTT Docomo, Inc. ("Docomo"), by and through its undersigned counsel, hereby petitions this Court for an order and judgment recognizing and confirming a final, binding arbitration award ("Final Award") issued in London, England, on June 22, 2016 by a duly constituted arbitral tribunal (the "Tribunal") in *NTT Docomo, Inc. v. Tata Sons Limited*, London Court of International Arbitration ("LCIA"), Case 152896 (the "Arbitration").  A true and correct copy of the Final Award is attached as Exhibit 1 to the accompanying Declaration of David Edward Kavanagh, dated October 6, 2016 (hereafter "Kavanagh Declaration").

       In support of this Petition, Petitioner respectfully states as follows:

## I.
## THE PARTIES

       1.     Petitioner Docomo, a company organized and existing under the laws of Japan, is a mobile telecommunications provider.

2.      Respondent Tata Sons Limited ("Tata"), incorporated under the laws of India, is a holding company of the Tata Group, an Indian conglomerate providing services in a variety of sectors around the world, including in the United States.

## II.
## JURISDICTION AND VENUE

3.      This proceeding arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (hereinafter "the New York Convention"), as implemented by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 201, *et seq.*, in particular Sections 203 and 207 thereof.  This Court has jurisdiction over the subject matter of this proceeding pursuant to 9 U.S.C. § 203 because the Final Award qualifies as a New York Convention award under 9 U.S.C. § 202:

    (a)      the legal relationships between Docomo and Tata, under which the Final Award arises, are commercial in nature; and

    (b)      the Final Award does not arise out of a relationship which is entirely between citizens of the United States.

4.      This Court has personal jurisdiction over Tata because Tata is registered to do business in New York and has designated an agent for service of process within New York.

5.      Venue is proper in this District pursuant to 9 U.S.C. § 204 and 28 U.S.C. § 1391(b)(3).  Tata is subject to the personal jurisdiction of this Court and is a non-U.S. resident against whom suit can be brought in any judicial district.  Thus, this Court is a competent authority and constitutes proper venue for this proceeding.

## III.
## FACTUAL BACKGROUND

6.      The Final Award resolves a dispute between Docomo and Tata that arose under a Shareholders Agreement dated March 25, 2009 (the "SHA").  The SHA lays out the

terms of Docomo's investment in Tata's telecommunications venture in India, Tata Teleservices

Limited ("TTSL"). A true and correct copy of the SHA is attached as Exhibit 2 to the Kavanagh

Declaration.

       7.     Clause 12.1.2 of the SHA contained a binding arbitration provision

requiring the parties to arbitrate all disputes:

> (a) <u>Arbitration</u>. Any dispute, controversy, claim or disagreement of any kind whatsoever between or among the Parties in connection with or arising out of this Agreement or the breach, termination or invalidity thereof (hereinafter referred to as a "Dispute") shall be referred to the Chairman of the Promoter or such other senior officer / director designated by the Chairman of the Promoter and the Chief Executive Officer of the Strategic Partner or such other senior officer designated by the Chief Executive Officer of the Strategic Partner. The Chairman and Chief Executive Officer shall deliberate in good faith and attempt a resolution of the Dispute within a period of thirty (30) days from the date on which the Dispute is referred to them. If the Chairman and Chief Executive Officer fail to resolve the Dispute within the said thirty (30) day period, **the Dispute shall be referred to and finally resolved by arbitration irrespective of the amount in Dispute or whether such Dispute would otherwise be considered justiciable or ripe for resolution by any court**.

> (b) Arbitration shall be conducted as per the Rules of the London Court of International Arbitration ("LCIA Rules"), which are deemed to be incorporated by reference into this Clause 12.1.2.

> (c) The number of arbitrators shall be three, one (1) of whom shall be nominated by the Strategic Partner, one (1) by the Company and the Promoter and the third one of whom shall be appointed by the two (2) arbitrators appointed by the Strategic Partner, the Company and the Promoter ("Arbitral Tribunal Chairman") and the said three (3) arbitrators shall hereinafter collectively be referred to as the "Arbitral Tribunal". The Company and the Promoter shall attempt to agree upon their respective appointment and if the Company and the Promoter fail to jointly nominate an arbitrator within thirty (30) days of service of the request for arbitration, an arbitrator shall be appointed on their behalf by the London Court of International Arbitration. In such circumstances, any existing nomination of the arbitrator chosen by the Strategic Partner shall be unaffected. If the two party-appointed arbitrators or one Strategic Partner nominated and one London Court of International Arbitration-appointed arbitrator cannot agree on the Arbitral Tribunal Chairman within thirty (30) days of the confirmation of the second appointed arbitrator, such Arbitral Tribunal Chairman shall be appointed by the London Court of International Arbitration.

(d) The Parties shall continue to perform their respective obligations under this Agreement to the extent possible notwithstanding commencement of any proceedings in accordance with this Clause 12.1.2. Such proceedings shall be conducted so as to cause the minimum inconvenience to the performance by the Parties of such obligations. The parties and the Arbitral Tribunal shall endeavour to conduct the arbitration as expeditiously as possible.

(e) The seat, or legal place of arbitration, shall be London, England and any award shall always be treated as made at the seat of the arbitration. The language to be used in the arbitral proceedings shall be English.

(f) If the Arbitral Tribunal fails to unanimously agree on any issue, the Arbitral Tribunal shall decide that issue by a simple majority vote (including the Arbitral Tribunal Chairman). By agreeing to arbitration under LCIA Rules read in conjunction with this Clause 12.1.2, the Parties undertake to abide by and carry out any award promptly. **The decision of the Arbitral Tribunal shall be final and binding, shall be carried into effect and may be enforced by an order of any competent court at the instance of any Party.**

(Ex. 2 at 58-59 § 12.1.2 (emphasis added)).

8.    Pursuant to the SHA, Docomo acquired 26% of TTSL's equity capital for a price of 106.09 Indian Rupees per share, amounting to a total investment of 127,355,808,008.78 Indian Rupees or approximately $2.5 billion.  (*Id.* at 2, § H).

9.    In Clause 5.7.2 of the SHA the parties agreed that, in the event that certain key performance indicators were not achieved by TTSL and Docomo decided to exit its investment, Tata was obliged either to find a buyer or buyers for the TTSL shares at the Sale Price (defined in the SHA to be the higher of the Fair Value or 50% of the Subscription Price), or, if such a buyer or buyers could not be found, to purchase the shares itself at any price and indemnify Docomo for any difference with the Sale Price.  (*Id.* at 43, § 5.7.2).  Clause 5.7.2 was the provision central to the dispute between the parties in the Arbitration.

10.    After TTSL failed to meet the key performance indicators outlined in the SHA, Docomo properly invoked its contractual rights under Clause 5.7.2 to exit its investment in

TTSL.  A dispute arose between the parties as to whether Tata had fulfilled its obligations under Clause 5.7.2.

11.     On January 3, 2015, Docomo commenced the Arbitration proceedings against Tata seeking an award of damages, as well as interest and costs, for Tata's breach of its obligations under the SHA.

12.     In response, Tata denied any breach of its obligations and sought declaratory relief, as well as an award of attorneys' fees and all costs in the Arbitration.

## IV.
## THE ARBITRATION PROCEEDINGS

13.     The Tribunal, as properly constituted in March 2015, consisted of Mr. David Sutton (appointed by Docomo), the Hon. Lord Leonard Hoffmann, former judge of the English Supreme Court (appointed by Tata) and Mr. Christopher Style, Q.C. (Presiding Arbitrator, appointed by the two co-arbitrators).

14.     Pursuant to a timetable established by the Tribunal, the parties exchanged briefing (accompanied by witness statements, expert reports and exhibits) and engaged in document discovery.  An evidentiary hearing took place in London, England, from May 3 to May 6, 2016, during which the Tribunal heard oral submissions from both sides, live testimony from the parties' witnesses, and cross-examination occurred.  Both parties were represented by counsel throughout the Arbitration.

15.     In addition, on June 10, 2016, the Tribunal received written submissions in support of the parties' claims to costs.  On June 14, 2016, the Tribunal declared the record closed.

## V.
## THE FINAL AWARD

16.     After fully considering the extensive evidence and the arguments presented by the parties, the Tribunal came to a decision and duly issued the Final Award on June 22, 2016, unanimously awarding Docomo damages, interest and costs.  (Ex. 1 ¶ 202).

17.     The Tribunal ordered the Final Award as follows:

> 1.   We order the Respondent to pay the Claimant within 21 days of the date of this Award US\$ 1,172,137,717 upon tender of the Sale Shares.

> 2.   We order the Respondent to pay the Claimant within 21 days US\$ 65,276,963, being interest on the said US\$ 1,172,137,717 from 3 December 2014 to the date of this Award, calculated at 3.5% per annum compounded with quarterly rests.

> 3.   We order the Respondent to pay the Claimant within 21 days GBP 119,012.59 by way of Arbitration Costs and JPY 1,067,670,175 by way of Legal Costs.

> 4.   We order the Respondent to pay the Claimant interest at 3.5% per annum compounded with quarterly rests on the amount outstanding under the Award from 21 days after the date of this Award until payment.

> 5.   We dismiss all other claims and counterclaims.

(*Id.* ¶ 202).

18.     In the Final Award, the Tribunal noted that (1) the parties had "advanced a number of arguments in their Memorials and submissions in this arbitration," (2) the parties had also "referred to extensive evidence and authorities in support," and (3) "these proceedings were hard fought, with both sides advancing numerous factual and legal submissions, including alternative submissions."  (Id. ¶¶ 81, 193).

19.     With respect to Docomo's primary claim, the Tribunal found that, because it was undisputed between the parties that Tata failed to perform its obligation to find a buyer or buyers for Docomo's TTSL shares on the terms set forth in the SHA, Tata was liable for breach of contract.  (*Id.* ¶¶ 144-48).  The Tribunal reasoned that "[t]he essence of [its] analysis of Clause

5.7.2 is that Tata was under an unqualified obligation to perform" (*id.* ¶ 169) and Tata admittedly failed to perform that obligation. (*Id.* ¶ 62, 144).

20.     The Tribunal rejected Tata's argument that it was not obligated to perform under Clause 5.7.2 of the SHA because the Reserve Bank of India had denied its request for special permission to buy Docomo's shares at the Sale Price under certain Indian Foreign Exchange Management Act ("FEMA") regulations.  Among other things, the Tribunal noted that: (i) under the contract, Tata "bore the risk that at the time of performance it was unable to find a willing buyer at the Sale Price because the market value of the Sale Shares had fallen" (*id.* ¶ 121) and any "impediment to performance was therefore factual rather than legal" (*id.* ¶ 139); (ii) the FEMA regulations invoked by Tata "do not excuse non-performance" because it was "common ground that there were methods of performance of the obligation in question which were covered by general permissions under FEMA" (*id.* ¶ 144); and (iii) Tata's argument that the Reserve Bank of India had not given it special permission to perform its obligation "did not render performance impossible" as "there were other methods of performance which were unaffected by the refusal." (*Id.* ¶ 145).

21.     To avoid any unjust recovery or double recovery, the Tribunal also directed Docomo to tender its shares to Tata or Tata's designee. By letter dated June 24, 2016, Docomo tendered its shares to Tata.  A true and correct copy of the letter is attached as Exhibit 3 to the Kavanagh Declaration.

22.     Tata, however, did not make the required payment to Docomo. Nor did Tata challenge the Final Award in England, the seat of the arbitration, within the required time period provided by the Arbitration Act 1996 (UK).  (Kavanagh Declaration ¶ 6).  As such, the Final Award is unquestionably final and binding and cannot be challenged by Tata.

23.     Petitioner now seeks recognition and confirmation of this Final Award as a judgment of this Court.[1]

## VI.
## BASIS FOR CONFIRMATION OF THE FINAL AWARD

24.     Section 207 of the FAA provides that: "Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration.  The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."

25.     The U.S. Court of Appeals for the Second Circuit has stated that "[c]onfirmation under the Convention is a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm."  *D.H. Blair & Co., Inc. v. Gottdiener,* 462 F.3d 95, 110 (2d Cir. 2006).  As such, confirmation of an arbitral award is typically a "summary proceeding that merely makes what is already a final arbitration award a judgment of the court…." (*Id.*) (citation omitted)).

26.     Under the New York Convention, a court may decline to confirm an arbitral award only where (1) "the parties to the arbitration agreement lacked capacity or the agreement was not legally valid"; (2) "proper notice of the appointment of the arbitrator or of the arbitration proceeding was not given"; (3) "the award deals with a matter not submitted to arbitration or beyond the scope of the submission"; (4) "the arbitral authority or procedure was not agreed to by the parties"; or (5) "the award was not yet binding or had been set aside or suspended in the

---

[1]   Docomo is also seeking to enforce the Final Award in England and India, which Tata has opposed.

enforcement forum." (New York Convention, Art. V). The New York Convention further permits a court to refuse recognition if: (a) the subject matter of the difference is not capable of settlement by arbitration under the law of that country; or (b) the recognition or enforcement of the award would be contrary to the public policy of that country. (*Id.*).

27. Here, none of the available grounds under the New York Convention for refusal or denial of recognition or enforcement of an award applies. The Final Award was the result of the parties' unambiguous agreement to arbitrate their disputes under the SHA. The parties expressly consented to the LCIA Rules whereby, pursuant to Article 26.8, the award is "final and binding on the parties" and the parties have "undertake[n] to carry out any award immediately and without any delay." The Arbitration was conducted in accordance with the parties' agreement by a tribunal jointly nominated. Tata was provided a full and fair opportunity to participate in the proceedings and did so with the assistance of competent counsel throughout the Arbitration. The Tribunal issued a lengthy, detailed, reasoned Final Award in which, after interpreting the terms of the SHA, it (i) found Tata liable for breach of contract, and (ii) denied all other counterclaims made by Tata. Tata chose not to challenge the Final Award in the English courts within the required time period, and the time for any challenges under the UK Arbitration Act (1996) has now expired.

28. Moreover, there can be no dispute that U.S. law permits resolution by arbitration of shareholder disputes arising out of commercial ventures. Finally, the recognition or enforcement of the Final Award would not be contrary to any public policy of the United States.

29. Accordingly, pursuant to the requirements of the New York Convention and the Federal Arbitration Act, the Court should confirm the Award. *See* 9 U.S.C. § 207.

## VII.
## CLAIM FOR RELIEF (9 U.S.C. § 207)

30.     Petitioner repeats and realleges each and every allegation set forth above, as if fully set forth herein.

31.     The New York Convention, as implemented by the FAA, 9 U.S.C. § 201, *et seq.*, governs the Final Award because the Final Award meets the qualifications of 9 U.S.C. § 202.

32.     The FAA provides that the "court *shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."  9 U.S.C. § 207 (emphasis added).

33.     None of the grounds available for refusal or denial of recognition or enforcement of an award specified in the New York Convention applies to the Final Award, and the Final Award must be confirmed pursuant to 9 U.S.C. § 207.

34.     By reason of the foregoing, Petitioner is entitled to the entry of an order and judgment confirming the Final Award and entering the Final Award, and each and every term thereof, as a judgment of this Court.

## VIII.
## RELIEF REQUESTED

35.     In light of the foregoing, Petitioner requests:

a.     an order of this Court pursuant to 9 U.S.C. § 207 confirming the Final Award and entering judgment thereon;

b.     a judgment in favor of Docomo against Tata in conformance with the Final Award, including compound interest and costs;

c.     an award of post-judgment compound interest pursuant to 28 U.S.C. § 1961;

d.     an award for Petitioner's costs of this civil proceeding, including reasonable attorneys' fees incurred in bringing this proceeding;

      e.    an order that this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary for the purpose of enforcing the Final Award and any further awards or judgments which may be obtained; and

      f.    any other relief that this Court deems necessary and proper in the interests of justice.


Date:   October 6, 2016
          New York, New York

                            KOBRE & KIM LLP

                            /s/ Steven G. Kobre
                            Steven G. Kobre
                            Tel.: (212) 488-1200
                            (steven.kobre@kobrekim.com)
                            Josef M. Klazen
                            Tel.: (212) 488-1200
                            (josef.klazen@kobrekim.com)
                            Marcus J. Green
                            Tel.: (212) 488-1200
                            (marcus.green@kobrekim.com)
                            Michael A. Sanfilippo
                            Tel.: (212) 488-1200
                            (michael.sanfilippo@kobrekim.com)
                            800 Third Avenue
                            New York, NY  10022

                            *Attorneys for Petitioner NTT Docomo, Inc.*